UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SUSAN JONES,

              Plaintiff,

        v.

U.S. BANK NATIONAL ASSOCIATION,

              Defendant.

No. CS-03-414-FVS

ORDER

**THIS MATTER** came before the Court for a hearing on several motions.  The plaintiff was represented by Mary Schultz; the defendant by Julie Lucht.

    **BACKGROUND**

    During 1999, Susan Jones ("plaintiff") became the manager of the Eastside Branch of U.S. Bank in Spokane, Washington.  At some point in 2001, U.S. Bank merged with Firstar.  Employees of U.S. Bank were required to apply for jobs with Firstar.  The plaintiff applied for the position she then held, manager of the Eastside Branch.  She was 43 years old.  One of the persons who interviewed her and approved her application was Steve Wilcox, the District Manager.  Due, at least in part, to Mr. Wilcox's support, Firstar retained the plaintiff.  From that point in 2001 until the end of 2002, her superiors gave her positive reviews.  However, during January and February of 2003, her

ORDER - 1

branch's productivity declined sharply. Both the plaintiff's immediate supervisor, Rob Shypitka, and Mr. Wilcox became concerned. They repeatedly pressed the plaintiff to indicate how she planned to reverse the decline. Neither was satisfied with her responses. During March, Mr. Shypitka applied more pressure. With Mr. Wilcox's approval, he directed her to submit a "Performance Improvement Plan" specifying the steps she intended to take in order to increase her branch's productivity. On or about March 10th, she submitted a plan that satisfied Mr. Shypitka. The plan contained demanding financial objectives, which she accomplished over the next eight weeks. During the first week of May, Mr. Shypitka acknowledged her success. At roughly the same time, one of her subordinates quit abruptly. She accused the plaintiff of describing Mr. Wilcox in profane terms in front of members of the staff. Mr. Shypitka spoke with employees at the Eastside Branch. They confirmed the essence of the subordinate's accusation. Mr. Shypitka and Mr. Wilcox requested permission to fire the plaintiff. Their request was approved by at least three members of upper management. Mr. Wilcox and Mr. Shypitka fired the plaintiff on May 7, 2003. At the time, she was 45 years old. She was replaced by a 38-year-old. Suspecting disparate treatment, she filed an action in state court. The defendant removed the matter to federal court based upon diversity of citizenship. 28 U.S.C. §§ 1441(b), 1332. Since this is a diversity case, the Court applies state substantive law and federal procedural law. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996).

ORDER - 2

**PLAINTIFF'S MOTION TO AMEND**

After the discovery cutoff elapsed and the defendant filed a motion for summary judgment, the plaintiff moved to amend her complaint to clarify her position.  She says that, not only is she alleging the defendant violated state law by discharging her, but also she is alleging the defendant violated state law prior to discharge by altering the terms of her employment.  Amendment is governed by Federal Rule of Civil Procedure 15(a).  Under this rule, the Court must consider bad faith, undue delay, prejudice, and futility.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987).  Clearly, the plaintiff's motion is untimely -- a circumstance for which she bears as much, if not more, responsibility than the defendant.  In addition, the defendant argues her motion is futile.

Under the law of the State of Washington, it is unlawful for an employer to discriminate against an employee in the terms of her employment because she is forty years of age or older.  RCW 49.44.090; RCW 49.60.180.  To date, no Washington appellate court has published an opinion specifying the elements of a prima facie case of age-related disparate treatment involving the terms of employment.[1]  Nevertheless, it is likely the plaintiff must prove the following

---

[1] It appears that the elements of a prima facie case are a matter of state substantive law rather than federal procedural law.  *Cf. Snead v. Metropolitan Property & Casualty Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir.) (unnecessary to resolve the issue because a prima facie case of disability discrimination was the same under both Oregon law and federal law), *cert. denied*, 534 U.S. 888, 122 S.Ct. 201, 151 L.Ed.2d 142 (2001).

ORDER - 3

elements: (1) she was at least forty years old at the beginning of 2003; (2) the defendant materially altered the terms of her job; but (3) the defendant did not alter the terms of a similar job that was being performed by a comparable employee who was significantly younger. *See Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 188, 23 P.3d 440 (2001); *Marquis v. City of Spokane*, 130 Wn.2d 97, 113-14, 922 P.2d 43 (1996); *Johnson v. Dep't of Social & Health Servs.*, 80 Wn. App. 212, 226-27, 907 P.2d 1223 (1996).[2]

The parties disagree with respect to the evidence necessary to establish the second element, *i.e.*, a material alteration of the terms of employment. The defendant claims the plaintiff must prove she was subjected to an "adverse employment action." The Washington Court of Appeals endorsed this view in *Kirby v. City of Tacoma*, 124 Wn. App. 454, 465, 98 P.3d 827 (2004). *Kirby* is consistent with federal law, *see, e.g., Chuang v. Univ. of California Davis*, 225 F.3d 1115, 1126 (9th Cir.2000), which the Washington Supreme Court relies upon to interpret state law. *See, e.g., Marquis*, 130 Wn.2d at 113. As a result, it is likely the state Supreme Court would require plaintiff to prove the existence of an adverse employment action or something closely akin to it.

"An actionable adverse employment action must involve a change in employment conditions that is more than an inconvenience or alteration of job responsibilities[.]" *Kirby*, 124 Wn. App. at 465 (internal

---

[2]Neither Hill nor Johnson alleged disparate treatment in the terms of her or his employment.

ORDER - 4

punctuation and citations omitted).  In *Kirby*, the Washington Court of Appeals suggested an employee cannot satisfy this requirement by alleging her employer yelled at her, or, worse still, threatened to fire her.  *See id.*  More is required.  By way of illustration only, the state Court of Appeals suggested an employee can satisfy this requirement by alleging her employer reduced her workload in a manner that decreased her pay.  *See id.*

Although the plaintiff concedes the defendant did not reduce her pay during the Winter and Spring of 2001, she insists there is more to a job than a pay check.  She submits her workload increased dramatically because of the demanding financial objectives she was expected to attain.  No doubt she is correct; but this is not enough to establish the existence of an adverse employment action.  The plaintiff was the manager of the Eastside Branch.  As such, she was responsible for reversing the sharp decline in her branch's loan base.  This meant extra work during the Winter and Spring of 2003.  The fact her superiors applied significant pressure, going so far as to threaten termination, did not alter her duties as a branch manager or impair her ability to fulfill them.  To the contrary, she understood that, as a branch manager, she needed to accomplish the very objective she was being pressured to accomplish, *viz.*, increase her branch's productivity.  Thus, she did not suffer an adverse employment action by virtue of the fact that, during 2003, she was required to complete a Performance Improvement Plan and attain demanding financial objectives.  Absent an adverse employment action or something closely

ORDER - 5

akin to it, the plaintiff cannot establish a prima facie case of age-related disparate treatment involving the terms of her employment.  It would be futile, therefore, to allow her to seek damages on this ground.  Her motion to add such an allegation will be denied.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Under Washington law, it is unlawful for an employer to fire an employee because she is forty years of age or older.  RCW 49.44.090; RCW 49.60.180.  The plaintiff has made a prima facie showing of unlawful discharge.  She was 45 years old when she was fired.  Other than the incident that allegedly led to her discharge, she was doing satisfactory work.  Furthermore, she was replaced by a significantly younger colleague.  *See Hill*, 144 Wn.2d at 188.  Given these facts, a rebuttable presumption of discrimination arises.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000); *Hill*, 144 Wn.2d at 181.[3]  The defendant may rebut it by demonstrating a nondiscriminatory basis for discharging the plaintiff.  *Reeves*, 530 U.S. at 142, 120 S.Ct. at 2106; *Hill*, 144 Wn.2d at 181-82.  The defendant has produced evidence that Mr. Shypitka and Mr. Wilcox requested permission to fire the plaintiff because she referred to Mr. Wilcox in profane terms in front of members of her staff.  This is sufficient to rebut the presumption, which now disappears from the case.  *Reeves*, 530 U.S. at 142-43, 120

---

[3]Since the same presumption arises under federal and state law, it is unnecessary to decide whether it is substantive or procedural in character.

ORDER - 6

S.Ct. at 2106; *Hill*, 144 Wn.2d at 182.   In order to avoid summary

judgment, the plaintiff must identify evidence in the record from

which a reasonable jury could find by a preponderance of the evidence

that the defendant intentionally discriminated against her because of

her age.   *Reeves*, 530 U.S. at 142, 120 S.Ct. at 2106; *Hill*, 144 Wn.2d

at 180-81.   She may do so by demonstrating "that the articulated

reason is pretextual '"either directly by persuading the court that a

discriminatory reason more likely motivated the [defendant] or

indirectly by showing that the [defendant's] proffered explanation is

unworthy of credence."'"   *Villiarimo v. Aloha Island Air, Inc.*, 281

F.3d 1054, 1065 (9th Cir.2002) (quoting *Chuang*, 225 F.3d at 1123

(quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256,

101 S.Ct. 1089, 67 L.Ed.2d 207 (1981))).   The plaintiff all but

concedes her use of profanity in front of her subordinates was a

factor in Mr. Shypitka's and Mr. Wilcox's decision to seek her

termination.   However, she argues that a genuine issue of material

fact exists with respect to whether her use of profanity was the only

factor upon which their request was based.   She submits that a

reasonable jury could find that her age also was a substantial factor

in their decision.   *See Mackay v. Acorn Custom Cabinetry, Inc.*, 127

Wn.2d 302, 310, 898 P.2d 284 (1995).   She need not present direct

evidence of discrimination in order to avoid summary judgment;

circumstantial evidence is sufficient.   *Cornwell v.Electra Cent.*

*Credit Union*, 439 F.3d 1018, 1029-31 (9th Cir.2006).   Under Federal

Rule of Civil Procedure 56(c), she is entitled to those inferences

ORDER - 7

that reasonably may be drawn in her favor. *See Reeves*, 530 U.S. at 150, 120 S.Ct. at 2110. The Court may neither determine credibility nor weigh the evidence. *Id.* The Court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151, 120 S.Ct. at 2110 (quoting 9A C. Wright & A. Miller, *Federal Practice and Procedure* § 2529, at 299-300 (2d ed.1995)). Finally, the Court "should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* (quoting 9A Wright & Miller, *supra*, § 2529 at 300).

The plaintiff alleges that, between 2001 and 2005, a significant change occurred among the branch managers who worked for the defendant in the Spokane area. Whereas, in 2001, nine out of eleven managers were over 40 years of age, by 2005, eight out of ten managers were under 40 years of age. The plaintiff alleges that this change suggests a plan on the part of the defendant to rid itself of older managers. A reasonable jury would be unable to agree. As the defendant points out, one of the former branch managers was fired after the U.S. National Credit Union Administration Board issued an Order of Prohibition. Another was fired because she was indicted for bank fraud. Others have submitted declarations indicating they left their positions voluntarily in order to pursue goals of their own. The plaintiff does not dispute the sincerity of their declarations. Viewed against this backdrop, the fact that Spokane-area branch

managers are, as a whole, much younger than they were five years ago does little to advance the plaintiff's contention that she is the victim of a discriminatory plan.

One of the persons who approved the plaintiff's termination was Pete Sinclair, the Manager of the Community Banking Division. The plaintiff says she attended a meeting during January of 2003 at which Mr. Sinclair and at least two other administrators spoke. According to the plaintiff, "they . . . mentioned a couple of branches in Oregon." (Deposition of Susan Jones, at 144.) They did so, says the plaintiff, because:

> [T]hey'd had branch managers there for quite a few years, like ten plus years, and the branches just weren't growing and so they actually said that they changed managers, out with the old, in with the new, and the new managers were now breaking records that had never been broken before from the previous management.

*Id.* The plaintiff suspects the phrase "out with the old, in with the new" indicates a desire on Mr. Sinclair's part to replace older branch managers with younger branch managers. Her suspicion is not well founded. To begin with, it's unclear whether Mr. Sinclair is the administrator who made the comment alleged by the plaintiff. Assuming he was, it appears to have been an isolated remark that was unrelated to his decision to approve her termination. Such remarks have limited probative value. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918-19 (9th Cir.1996), *cert. denied*, 522 U.S. 950, 118 S.Ct. 369, 139 L.Ed.2d 287 (1997); *Domingo v. Boeing Employees' Credit Union*, 124 Wn. App. 71, 90 n.53, 98 P.3d 1222 (2004).

The plaintiff alleges that Mr. Wilcox and his subordinates held

ORDER - 9

older managers to a more exacting standard.  She relies, in part, upon the experience of Kathy Kroske, who became the manager of the Manito Branch on September 2, 2001.  At the time, she was 50 years old.  Her immediate supervisor was Tony Ghigo, who was 30 years old.  On June 3, 2002, Mr. Ghigo ordered her to complete a Performance Improvement Plan over a period of thirty days.  She did not achieve the goals set forth in the plan.  On July 17, 2002, Mr. Ghigo fired her.  It is not coincidental, says the plaintiff, that older managers were treated more severely.  She has offered a report from Todd J. Thorsteinson, Ph.D., an associate professor of psychology at the University of Idaho, indicating that businesses impose unattainable demands upon employees whom they are seeking to eliminate.

It is questionable whether a reasonable jury could find that Mr. Ghigo imposed objectively unattainable goals.  Ms. Kroske says she told him prior to her discharge that she could attain the goals if given two more weeks.  This implies the goals were attainable. However, even if Mr. Ghigo imposed objectively unattainable goals, that was Mr. Ghigo.  The plaintiff did not report to him; she reported to Mr. Shypitka.  The supposedly "unattainable" remedial measures imposed by Mr. Shypitka were attainable.  The plaintiff accomplished all of them within a period of time that was acceptable to him.  On May 6, 2003, he met with the plaintiff and formally acknowledged her success.  The meeting occurred before he heard of her subordinate's abrupt resignation and complaint about the plaintiff's use of profanity.  The defendant argues that, were it not for the plaintiff's

use of profanity in front of her staff, Mr. Shypitka would have continued giving the plaintiff credit for her successes. The plaintiff disagrees. As she points out, Mr. Shypitka had already decided to require her to complete another Performance Improvement Plan. To her way of thinking, his decision reflects a determination to continue finding fault with her. This perception is not supported by the record. The new Performance Improvement Plan was a consequence of the fact her branch failed an audit. She does not dispute that an audit failure is a serious matter. Nor has she offered evidence indicating Mr. Shypitka treated other managers differently when their branches failed audits.

The plaintiff alleges Mr. Wilcox favored younger branch managers. She includes Jason Mollison, Scott Webster, Corey Buettner, Windy Rudd, and Jennifer Bolles on her list of younger employees whom Mr. Wilcox allegedly favored. She submits they were not required to undertake remedial measures despite numerous instances of poor performance. To the plaintiff's way of thinking, Mr. Wilcox's failure to require younger managers to undertake remedial measures suggests both that he is hostile toward older managers and that his explanation of his decision to seek her discharge is incomplete. The plaintiff is at least partially correct. A showing that Mr. Wilcox treated similarly-situated managers outside the protected class more favorably than he treated the plaintiff would tend to indicate pretext. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir.2003). But the younger managers must be similarly situated. In *Vasquez*, the Ninth

ORDER - 11

Circuit indicated that, in order to be similarly situated, "an employee must have the same supervisor, be subject to the same standards, and have engaged in the same conduct."  349 F.3d at 641 n.17 (citing *Hollins v. Atlantic Co.*, Inc., 188 F.3d 652, 659 (6th Cir.1999)).  It is unclear whether Mr. Shypitka supervised the managers listed above.  Even if the plaintiff need not show they were supervised by him, she must that show their poor performances occurred in contexts which were comparable to hers.  In order to satisfy this requirement, she must produce enough information for a jury to answer at least three questions:  Was the business climate in which the younger manager performed poorly roughly the same as the business climate during the Winter and Spring of 2003?  Is the sphere of banking in which the younger manager performed poorly roughly equivalent in financial significance to the sphere of banking in which the plaintiff struggled, *i.e.*, the maintenance and expansion of loan base?  Finally, are the plaintiff's and the younger manager's performances being measured by a common financial standard?  Given the record as it now stands, a reasonable jury would be unable to answer these questions.  As a result, the jury would be unable to fairly assess whether Mr. Wilcox failed to require younger managers to undertake remedial measures in circumstances that were comparable to hers.

The experience of Windy Rudd illustrates why it is essential to identify valid criteria for comparing the plaintiff's performance with the performances of the younger managers.  Ms. Rudd served as the

ORDER - 12

manager of the Lincoln Heights branch.  The plaintiff alleges that "from January 2, 2004, her loan base at Lincoln Heights branch dropped from $9.9 million dollars to $8.9 million dollars, or a loss of one million dollars of base loan." (Amended Separate State of Material Facts, ¶ 241, at p. 43.)  This statement suggests a sharp decline in productivity during Ms. Rudd's tenure.  However, as the plaintiff concedes in the following statement of material fact, Ms. Rudd did not become the manager of the Lincoln Heights branch until "the end of October, 2004[.]" (Amended Separate State of Material Facts, ¶ 242, at p. 43.)  Despite making this concession, the plaintiff does not correct the impression she created with respect to Ms. Rudd's performance during 2004.  She simply proceeds to allege that Ms. Rudd "did not increase the loan base by December, but instead lost approximately $28,000 of loan base." *Id.*  According to the defendant, even this statement is inaccurate.  The defendant alleges that, between October 15, 2004, and December 31, 2004, the loan base at the Lincoln Heights branch decreased by $21,205.  (Defendant's Response, ¶ 242, at 102.)  Whether the decrease was "$21,205.00", as the defendant alleges, or "approximately $28,000," as the plaintiff alleges, it is difficult to see how a reasonable jury could find that Ms. Rudd's situation during her first two months as branch manager was comparable to the plaintiff's situation during January and February of 2003.

The plaintiff seems to concede she deserved some type of sanction because of her profane remarks about Mr. Wilcox.  She insists, nonetheless, that the severity of the defendant's response is evidence

of pretext.  To begin with, she notes that the defendant does not cite the use of profanity as an example of misconduct in its training materials.  Furthermore, her superiors did not give her a warning or place her on probation, which, she submits, is contrary to the procedure suggested by the defendant's training materials.  Instead, they fired her.  She claims the severe manner in which they responded to her offense stands in marked contrast to the manner in which they responded to misconduct on the part of younger managers.  Cindy Baracco, one of the defendant's former employees, says the defendant did not discipline Mark Butera, then 32 years old, despite the fact he engaged in unethical conduct.  The defendant's failure to discipline Mr. Butera is one of the reasons Ms. Baracco says she went to work for another bank.

Ms. Baracco's allegations regarding Mr. Butera are vague.  This may stem from a lack of first-hand knowledge.  Although the record is unclear, it appears she learned about Mr. Butera's alleged misconduct from someone else.  If so, her testimony may be inadmissible hearsay. Be that as it may, the defendant has provided evidence concerning the incident.  Mr. Butera and two other employees received written warnings from Mr. Wilcox because they failed to adequately supervise the processing of life insurance applications.  The plaintiff argues that the conduct for which Mr. Butera was reprimanded was unethical. The defendant does not disagree.  Nevertheless, there are two reasons why this incident does not advance the plaintiff's allegation of preferential treatment.  To begin with, Mr. Butera and the plaintiff

did not engage in the same type of misconduct. *Vasquez*, 349 F.3d at 641 n.17.  More importantly, Mr. Butera was fired at some point thereafter for some other reason.

In conclusion, it is undisputed both Mr. Shypitka and Mr. Wilcox wanted to fire the plaintiff.  She has identified no evidence from which a reasonable jury could find that Mr. Shypitka sought her discharge for any reason other than the one he has given; namely, her profane reference to Mr. Wilcox in front of her staff.  As a result, the focus shifts to Mr. Wilcox.  She must identify evidence from which a reasonable jury could find that her age was a substantial, albeit unspoken, factor in his decision to seek her discharge.  If there is such evidence in the record, it is weak; too weak to overcome a well-established inference to which Mr. Wilcox is entitled.  He was one of the persons who approved her application for the managership of the Eastside Branch.  "[W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-71 (9th Cir.1996) (citations omitted).  Washington law is in complete accord. *Hill*, 144 Wn.2d at 189.  As the defendant points out, the plaintiff was 43 years old when Mr. Wilcox interviewed her in 2001.  She does not allege that he was unaware of her age.  Consequently, it must be inferred that her age was not a factor in his decision to seek her discharge.  The inference may not be as strong in this case as in others because he was not the only

ORDER - 15

administrator who approved her application.  Even so, his role in the plaintiff's selection as manager of the Eastside Branch poses "an obvious question[.]"  *Id.*  If he was opposed to having branch managers who are over 40 years of age, why did he support her in 2001? *See id.* at 189-90.  The plaintiff has not provided a satisfactory answer.  A reasonable jury would be unable to find that Mr. Wilcox sought the plaintiff's discharge based in substantial part upon her age.  Thus, the defendant's motion for summary judgment will be granted.

     **IT IS HEREBY ORDERED**:

     1. The plaintiff's motion to amend (**Ct. Rec. 101**) is denied.

     2. The defendant's motion for summary judgment (**Ct. Rec. 93**) is granted.  The plaintiff's claims against the defendant are dismissed with prejudice.

     3. The defendant's motion to exclude Dr. Thorsteinson's report (**Ct. Rec. 98**) is denied as moot.

     4. The plaintiff's motion for additional trial time (**Ct. Rec. 140**) is denied as moot.

     **IT IS SO ORDERED.**  The District Court Executive is hereby directed to file this order, enter judgment accordingly, and furnish copies to counsel.

     **DATED** this   1st   day of June, 2006.

                      s/ Fred Van Sickle
                      Fred Van Sickle
             United States District Judge